IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NORMAN JAY FRANCIS, JR.<br><br>   Petitioner,<br><br>   v.<br><br>WARDEN<br><br>   Respondent. | Civil Action No.: RDB-21-46 |

**MEMORANDUM OPINION**

Petitioner, Norman Jay Francis, Jr., has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Respondent asserts that the Petition should be dismissed because the sole claim lacks merit. ECF No. 9. After review of the pleadings filed, this Court deems a hearing in this matter unnecessary, and denies Francis Jr.'s motion for same (ECF No. 17). *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2023); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons that follow, the Petition shall be denied, and a certificate of appealability shall not issue.

**BACKGROUND**

**I.   Trial**

On November 5, 2012, Francis, Jr. was charged in the Circuit Court for Baltimore County with attempted first degree murder, first degree assault, and second degree assault. ECF No. 9-1 at 4, 27.[1] After a trial by jury, held April 23-25, 2012, Francis, Jr. was found guilty as charged.

---

[1] The prosecution dismissed a firearm charge before the case was submitted to the jury. ECF No. 9-1 at 19-20.

*Id.* at 19-21.  On June 28, 2013, the Circuit Court sentenced Francis, Jr. to life imprisonment.  *Id.* at 16-17.

    II.    **Direct Appeal**

Francis, Jr. noted a direct appeal to the Appellate Court of Maryland,[2] which described the facts as follows:

> This case arises out of the stabbing of Matthew Ricketts on October 13, 2012, in the early morning hours, at the Royal Farms gas station on Eastern Boulevard in Dundalk.  Mr. Ricketts and Jared Coleman spent a few hours drinking at the Malibu Beach Bar, located diagonally across from the Royal Farms store.  While at the bar, Mr. Ricketts and Mr. Coleman danced with two women, and a man with dreadlocks, later identified as Juan Hester, gave them "dirty looks."  Mr. Ricketts and Mr. Coleman left the bar at approximately 2:00 a.m., closing time.  When they went out, someone was leaning on Mr. Ricketts' car.  Mr. Hester then approached, telling the women not to get into Mr. Ricketts' car because it was "rented."  A verbal disagreement ensued between Mr. Ricketts and Mr. Coleman and a group of men that included Mr. Hester.
>
> Mr. Ricketts and Mr. Coleman then drove away.  They stopped at Royal Farms to get gas.  The two women with whom they had been dancing were inside the store.
>
> Mr. Ricketts and Mr. Coleman went inside the store.  Mr. Coleman spoke to the girls inside, and when he exited the store, Mr. Hester, who had also gone to the Royal Farms, punched him in the back of the head.  Mr. Coleman continued walking toward Mr. Ricketts' car.
>
> Moments later, Mr. Ricketts exited the store, and Mr. Hester punched him in the face, knocking him to the ground.  A second man then approached Mr. Ricketts, stabbing him seven times while he was on the ground.  The two men then ran to a black car and "drove off really fast."

---

[2]    At the time Francis, Jr.'s case was litigated in the Maryland state courts, the Appellate Court of Maryland was named the "Court of Special Appeals" and the Supreme Court of Maryland was named the "Court of Appeals of Maryland."  At the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment changing the name of both courts.  The name change took effect on December 14, 2022.

The surveillance system at Royal Farms recorded the stabbing. The police spoke to witnesses, and they were able to determine the identity of the drivers of the two vehicles that left the Royal Farms quickly around the time of the stabbing.

The driver of the silver Honda Accord, William Bland, testified that he was at the Malibu Beach Bar that night and he offered Francis, Jr. a ride home because Francis, Jr. was drunk. The two stopped at Royal Farms to say goodnight to a friend, Albert Tasker, his girlfriend, Linda Key, and her sister, Rasheeta Tally. When Mr. Bland returned to his car from the Royal Farms store, Francis, Jr. was gone.

The driver of the black Jaguar, Albert Tasker, testified that he was with Francis, Jr. at the Malibu Beach Bar that night. He subsequently went to the Royal Farms. He left with Francis, Jr. and Mr. Hester.

The police subsequently arrested Francis, Jr. and seized his cell phone. A search of the cell phone revealed a text message from Francis, Jr.'s phone at 1:23 p.m. on the date of the stabbing, stating "Yo, I had to hawk a nigga at a gas station last night. Niggas tried to wyle me bout sitting on his car and shit when the spot was letting out." In addition, the police found a photograph on the phone showing Francis, Jr. wearing a red-billed baseball cap. The surveillance system at Royal Farms recorded a man with a red-billed cap stabbing Mr. Ricketts.

The State introduced into evidence several telephone calls Francis, Jr. made from jail. Among the topics discussed in these calls were: whether the video surveillance at Royal Farms would be "fuzzy," whether anyone watching the surveillance tape would be able to clearly identify anyone on the tape, that the victim had not identified his attacker, and that police had taken his phone. In addition, on one call, Francis, Jr. asked Mr. Bland why he told police that Francis, Jr. "was there when this shit happened." Mr. Bland explained that the police showed him a picture of Francis, Jr. getting out of Mr. Bland's car and Francis, Jr. stated: "you feeling me, like I was drinking, I'm scared, I'm on parole."

*Id.* at 30-33. The Maryland Appellate Court affirmed Francis, Jr.'s convictions and sentence on February 25, 2015. *Id.*

### III.    State Post-Conviction Proceedings

Francis, Jr. filed a *pro se* postconviction petition on May 24, 2018. *Id.* at 40-146.[3] The postconviction court held a hearing on December 10, 2019, and ruled from the bench, denying all of Francis, Jr.'s claims. *Id.* at 160-225. Francis, Jr. applied for leave to appeal the order on December 23, 2019, and the Appellate Court of Maryland denied leave on April 14, 2020. *Id.* at 232-233.

### IV.    Federal Habeas Corpus Petition

Francis, Jr. seeks habeas relief on a single allegation that his trial counsel was ineffective for failing to request a jury injury instruction on his decision not to testify. Respondent contends that the postconviction court properly dismissed the claim and Francis, Jr. is not entitled to habeas relief because the dismissal of the claim is not contrary to or an unreasonable application of federal law.

## STANDARD OF REVIEW

**1.  28 U.S.C. § 2254**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S. 415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S.

---

[3]    The record reflects that Francis, Jr. filed a *pro se* petition on September 25, 2018, but he elected at the postconviction hearing to proceed only on the allegations contained in the May, 2018 petition. ECF No. 9-1 at 168.

86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court

5

may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

**2. Ineffective Assistance of Counsel**

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient, and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. at 696.

As the Supreme Court held in *Strickland*, "a state court conclusion that counsel rendered effective assistance of counsel is not a finding of fact binding on the federal court to the extent stated by [former] 28 U.S.C. § 2254(d)[ now § 2254(e)(1)]." *Id*. at 698. Rather, "although state

court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254[(e)(1)], . . . both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* It follows, then, that § 2254(d)(1) applies to the state court's conclusion that the petitioner's trial counsel rendered effective assistance of counsel and this Court may not grant relief on this claim as long as the state court denied the claim based on a reasonable application of the *Strickland* standard to the facts presented in the state court proceeding.

## ANALYSIS

As an initial matter, the Court will address the appropriate standard of review for Francis, Jr.'s ineffective assistance of counsel claim. Ordinarily, a claim for federal habeas corpus relief is subject to deferential review, as explained *supra*, when it has been "adjudicated on the merits." However, the record here reflects that the postconviction court neglected to adjudicate Francis, Jr.'s claim on the merits.

Francis, Jr. raised an ineffective assistance of counsel claim in his *pro se* postconviction petition, alleging that his counsel failed to request a jury instruction regarding his decision not to testify at trial. ECF No. 9-1 at 55-60. When he testified during the postconviction hearing, Francis specifically couched his claim as ineffective assistance of counsel. *Id.* at 183. At the close of the hearing, Francis, Jr.'s counsel argued that his counsel was ineffective for failing to make sure that the jury heard an instruction about Francis, Jr's decision not to testify. *Id.* at 205-209. However, when the postconviction court ruled on the claim, it treated the issue as a trial court error only and did not address counsel's alleged ineffectiveness:

> Petitioner alleges error on the part of trial judge for failure to instruct the jury of his right not to testify. It is well settled that such an instruction is only required if it is requested. In this case such an instruction was not requested, nor was the lack

7

      thereof objected to.  For these reasons, postconviction relief is denied as to this allegation.

*Id.* at 219.

      In *Johnson v. Williams*, 568 U.S. 289 (2013), the Supreme Court explained that while generally, federal relief is confined only to those claims "already adjudicated on the merits" in state court, *id.* at 292 (quoting 28 U.S.C. § 2254(d)), "[w]hen the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge." *Id.* at 303. Such is the case here. Accordingly, the Court reviews this claim *de novo*.

      Francis, Jr. contends that his trial counsel's performance was deficient because he failed to request a jury instruction regarding his decision not testify or because the instruction requested on this issue was not given to the jury and there was no objection. The Appellate Court of Maryland addressed the issue as an alleged trial court error on direct appeal, confirming that no instruction was given to the jury and no objection was lodged by counsel. ECF No. 9-1 at 38-39. The direct appeal opinion comments that trial counsel will sometimes intentionally forgo this instruction, *id.* at 38, but no evidence was offered during postconviction proceedings from Francis, Jr.'s trial counsel that would explain any potential strategy for his failure to object.

      In any event, Francis, Jr. cannot establish that he was prejudiced. During postconviction proceedings, his counsel argued that he was prejudiced because a juror told trial counsel after the trial that Francis, Jr.'s failure to testify was discussed during deliberation. *Id.* at 205-209; 117. However, Francis, Jr. offered no evidence during his state court proceedings to substantiate this allegation. Neither his trial counsel nor the juror that allegedly made the statement testified at the

8

postconviction hearing or submitted an affidavit. Indeed, Maryland Rule 5-606 (similar to Fed. R. Evid. 606[4]), would likely have precluded any such testimony by any of the jurors.[5]

Even if Francis, Jr. could establish that the jury improperly considered his failure to take the stand, this trial error would be subject to harmless error review. *See Arizona v. Fulminante*, 499 U.S. 279, 309 (1991). The Appellate Court of Maryland engaged in a lengthy discussion of the evidence established at trial, which was found to be sufficient to sustain Francis, Jr.'s convictions. Notably, Francis made certain admissions about his guilt in text messages and in jail telephone calls, the Royal Farms surveillance depicted the perpetrator wearing the same hat as Francis, Jr. was wearing the night of the stabbing, and witnesses placed him at the scene. Given the evidence of Francis, Jr.'s guilt, there is no reasonable likelihood that the result of the proceeding would have been different if his counsel had lodged an objection about the lack of an instruction about his decision to not to testify.

Accordingly, Francis, Jr.'s sole claim for relief is without merit and his Petition is dismissed.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

---

[4] Prohibited Testimony or Other Evidence. During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters. Fed. R. Evid. 606.

[5] Inquiry into validity of verdict. (1) In any inquiry into the validity of a verdict, a sworn juror may not testify as to (A) any matter or statement occurring during the course of the jury's deliberations, (B) the effect of anything upon that or any other sworn juror's mind or emotions as influencing the sworn juror to assent or dissent from the verdict, or (C) the sworn juror's mental processes in connection with the verdict. Md. Rule 5-606.

Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.*

Francis, Jr. has failed to satisfy this standard on any of his claims. Therefore, a certificate of appealability shall not issue.

A separate Order follows.

   9/1/2023                                                 /s/
Date                                                         RICHARD D. BENNETT
                                                              UNITED STATES DISTRICT JUDGE